BANK OF VIRGINIA-CENTRAL v. TAURUS CONSTRUCTION COM-
PANY, CECIL C. CRAIG, PAUL K. CRAIG, AND THE CAROLINA
BANK

No. 7611SC207

(Filed 21 July 1976)

Uniform Commercial Code § 74— transfer of secured property — continu-
ation of security interest

A bank's security interest in equipment acquired at the time of
purchase of the equipment from the bank continued after the pur-
chaser's transfer of the equipment to a corporation where the bank
did not authorize the transfer from the purchaser to the corporation.
G.S. 25-9-306.

APPEAL by plaintiff from *Gavin, Judge.* Order entered 18
December 1975 in Superior Court, LEE County. Heard in the
Court of Appeals 9 June 1976.

Plaintiff seeks possession of certain earth moving equip-
ment in which it claims a security interest by virtue of a se-
curity agreement executed by Taurus Construction Company.
Defendant Carolina Bank claims a security interest in the same
equipment.

The pertinent facts, as found by the trial judge, are as
follows:

## "FINDINGS OF FACT

1. On June 20, 1974, The Carolina Bank sold and de-
livered to Cecil C. Craig and wife, Nellie K. Craig, the fol-
lowing equipment . . . [the equipment that is the subject
of this action]. In payment for the equipment the Craigs
gave The Carolina Bank their note and security agreement
of the same date granting a security interest in the afore-
said equipment to the Bank, which security interest was
duly perfected by filing completed on June 26, 1974.

2. On July 11, 1974, Cecil C. Craig organized a North
Carolina corporation under the name of Taurus Construc-
tion Company, and thereafter operated the same as its sole
stockholder and director.

3. Upon the date of its incorporation, Taurus Con-
struction Company accepted the offer of the Craigs to
transfer all of the equipment acquired from The Carolina

Bank to the Company, solely in consideration of the assumption by the Company of their indebtedness to The Carolina Bank. The only documentation of the proposed transfer of equipment and assumption of indebtedness was contained in the organizational minutes of Taurus Construction Company.

4. The Carolina Bank was not told of and did not authorize the transfer of the equipment by the Craigs or the assumption of the indebtedness by Taurus Construction Company. The Security Agreement between the Craigs and The Carolina Bank specifically provides that ' . . . nothing herein shall be construed as consent or authorization by Secured Party to any sale or other disposition of any part thereof . . . ' (i.e., the collateral), and The Carolina Bank did not otherwise authorize the transfer, sale, exchange or other disposition of the collateral by the Craigs.

5. On July 17, 1974, the plaintiff sold to Taurus Construction Company certain items of equipment and in payment received the Company's note and purchase money security agreement. Thereafter financing statements covering only that purchased equipment were duly filed and plaintiff's security interest therein perfected. All that equipment has now been repossessed by the plaintiff and there is no controversy as to plaintiff's right of possession to such equipment.

6. Taurus Construction Company failed to make the scheduled installment payments on its original equipment note to the plaintiff and in response to plaintiff's demands and agreement to defer immediate repossession of its original collateral, Taurus Construction Company entered into an additional security agreement with the plaintiff bearing the date of October 4, 1974, but which in fact was not signed or delivered until the last week of November, 1974. Such additional security agreement purported to grant plaintiff a security interest in

' . . . all accounts, contract rights, general intangibles, inventory instruments, documents, chattel paper and equipment as listed below, but not limited to, including all goods represented thereby and all goods that may be reclaimed or repossessed from or returned by account debtors, now owned or hereafter acquired by the Borrower, to secure all in-

debtedness of every kind and description, however arising, of the Borrower to the Bank, whether such indebtedness be direct or indirect, fixed or contingent, liquidated or unliquidated . . . '

'THE SECURITY AGREEMENT does not modify or change in any way a Purchase Money Security Agreement dated the 17th day of July, 1974, which grants the Bank a purchase money security interest in the following equipment . . . '

The only equipment thereafter listed was the equipment originally sold by the plaintiff to Taurus Construction Company. No other references to specific equipment appeared in the security agreement or the financing statements subsequently filed by the plaintiff in the office of the Lee County Register of Deeds on November 27, 1974, and in the office of the Secretary of State on December 4, 1974.

7. When Taurus Construction Company entered into the additional security agreement, plaintiff's representatives were told that all of the equipment in question was encumbered, which fact was confirmed by Taurus Construction Company's financial statements previously furnished to the plaintiff.

8. Plaintiff also knew that the equipment in question which it is now seeking to recover from The Carolina Bank was sold by that Bank to the Craigs under the security agreement of June 20, 1974, and that at the time plaintiff took its second security agreement from Taurus Construction Company plaintiff knew that there had been no amendment or termination of the financing statements evidencing the security interest of The Carolina Bank. Plaintiff made no inquiry of The Carolina Bank with regard to the status of The Carolina Bank's security interest.

9. Cecil C. Craig and wife, Nellie K. Craig defaulted on their obligation to The Carolina Bank and The Carolina Bank has taken into its possession the equipment listed in its security agreement with the exception of one piece of equipment which was destroyed by fire."

The court then made the following conclusions of law:

"CONCLUSIONS OF LAW

1. The security interest of The Carolina Bank in the equipment in question perfected on June 26, 1974, continued in such collateral notwithstanding the subsequent transfer of the equipment by the Debtors to Taurus Construction Company.

2. Plaintiff's security interest, if any, does not have priority over the previously perfected security interest of The Carolina Bank."

Plaintiff was denied possession of the property and appealed.

*Horton, Singer & Michaels, by Richard G. Singer, for plaintiff appellant.*

*McDermott & Parks, by George M. McDermott, for defendant appellees, Taurus Construction Company and Cecil C. Craig.*

*Harrington & Shaw, by Gerald E. Shaw, for defendant appellee, The Carolina Bank.*

VAUGHN, Judge.

Counsel are to be congratulated on their well prepared briefs which reflect careful research on the several Uniform Commercial Code questions they raise. In our view of the case, however, it is not necessary for us to discuss either whether the transaction between Craig and his solely owned corporation was a disposition of the property within the meaning of the code or whether the rights of the parties are affected by plaintiff's actual knowledge or lack of knowledge of the security agreement between Craig and The Carolina Bank.

The applicable code section is as follows:

"(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." G.S. 25-9-306.

Thus, unless Carolina Bank authorized the "transfer" from Craig to Taurus Construction Company, that Bank's security interest continues in the equipment. Whether The Carolina Bank authorized the transfer was a question of fact for determination by the trial judge. The judge found as a fact that Carolina Bank did not authorize the transfer. If the trial judge's findings of fact are supported by competent evidence, they are conclusive on appeal.

There is evidence in the record to support the judge's finding. Craig testified:

"I never received any authorization from The Carolina Bank to organize Taurus in the manner that I did or to assign the equipment to Taurus Construction Company. Paul was the general manager and he worked this corporation up. I was the owner of the equipment that came from The Carolina Bank. Neither The Carolina Bank nor anyone representing it told me to transfer the equipment to Taurus Construction Company.

\* \* \*

I did not receive any other consideration. I did not discuss with Mr. Rush or anyone else in The Carolina Bank the organization or Taurus Construction Company. I did not authorize anyone to have such discussion."

The finding of fact also finds support elsewhere in the record including the testimony of the witness Rush, Vice President of Carolina Bank.

The judgment from which plaintiff appeals is affirmed.

Affirmed.

Judges MARTIN and CLARK concur.